# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES GREEN, | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | No. 08-5581 |
| v. | : | |
| | : | |
| MICHAEL D. KLOPOTOSKI, *et al.*, | : | |
| Respondents | : | |
| | : | |

**Memorandum**

YOHN, J.                                                              December 3, 2009

Petitioner James H. Green has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Green is currently serving a sentence of 27 to 54 years following his convictions for third-degree murder, possession of an instrument of crime, carrying a firearm without a license, and recklessly endangering another person. Green asserts that his conviction resulted from various violations of his Sixth Amendment right to counsel and that he was deprived of his right to a direct appeal. After conducting a *de novo* review of the Report and Recommendation of United States Magistrate Judge Linda K. Caracappa, and upon careful consideration of Green's objections thereto and the parties' submissions, I will approve and adopt the relevant conclusions of the magistrate judge and dismiss Green's habeas petition as untimely.

## I. Facts and Procedural History[1]

Because this decision centers around whether Green's habeas petition is time-barred under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), it is necessary to review this case's intricate procedural history.

Green's convictions arose out of the events of December 13, 2002. On that day, Green's cousin, Josh Kocher, became involved in an argument at a party with the victim, Robert Williams Graig. Josh Kocher then left the party and returned with Green and another cousin, Shaun Kocher. Shaun Kocher brought with him a pistol, which was nonfunctional. At the party, Josh Kocher again began to argue with Graig. Graig appeared to reach for something in his pocket, and Shaun drew his nonfunctioning weapon. Green then drew his own firearm and fired one shot, killing Graig.

Green was tried before a jury in the Court of Common Pleas of Berks County before the Honorable Linda K. M. Ludgate. (A30.) At trial, the prosecution presented Shaun Kocher and the host of the party as witnesses to Graig's death. (A42-50, A52-69.) Green testified in his own defense, claiming that he had been at the house of his girlfriend, Jaceri Morales, that night. (*See* A116-18.) Although Green planned to present Morales as an alibi witness, Morales recanted her proposed testimony during a conversation with one of Green's defense attorneys, Michael Hollinger, after trial had begun. (A123-24.) Hollinger and co-counsel, Kevin Beals, promptly informed the trial judge, outside the presence of the prosecuting attorney and jury, that Morales's testimony was likely to contradict Green's and that they would therefore not be presenting her as

---

[1] Unless otherwise noted, the court derives this recitation of the facts underlying Green's conviction from the April 21, 2008, opinion of the Superior Court ("2008 Op. Super. Ct.") denying Green's first PCRA appeal. (Appendix to Resp't's Ans. A309-17.) (Hereinafter, citations to Respondent's Appendix will be referred to solely by the page number, *i.e.*, "A__.")

a witness. (A124.) Beals further remarked to the trial judge that, in light of what he had just learned, he believed that Green had committed perjury and that he felt he had a duty to so inform the court. (A124.) In response, the trial judge told Beals that she "[didn't] know if [Beals had] to divulge [his] attorney/client privilege at this point." (*Id.*) However, Beals continued to discuss his belief that Green had committed perjury. (*Id.*)

On March 11, 2004, the jury convicted Green of third-degree murder and various ancillary offenses. On April 1, 2004, pursuant to the jury's verdict, the Court of Common Pleas sentenced Green to an aggregate prison term of 27 to 54 years.[2] According to the prosecuting attorney, the applicable guideline ranges were all lower than the sentences that the trial court imposed. (*See* A187.) At the sentencing hearing, the trial judge confirmed that Green was aware of his post-conviction rights and noted that "Mr. Beals and his office will continue to represent [Green] throughout an appeal from the decision of the jury through the appellate court system." (A193.)

On April 22, 2004, Green attempted to file with the Court of Common Pleas an untimely *pro se* motion to modify and reduce his sentence pursuant to Pennsylvania Rule of Criminal Procedure 720.[3] In this motion, Green argued that his sentence was excessive and that it deviated unreasonably from the applicable guidelines. (A200-02.) The motion also included a paragraph in which Green claimed that his trial counsel was "ineffective throughout all proceeding [sic]" and that the testimony at trial had been insufficient to convict him. (A201-02.) Pursuant to

---

[2] The individual sentences were: 20 to 40 years for third-degree murder; 30 months to five years for possession of an instrument of crime; 42 months to seven years for carrying a firearm without a license; and one to two years for reckless endangerment of another person, all to be served consecutively. (A3-A4.)

[3] Pennsylvania Rule of Criminal Procedure 720(A)(1) provides that a written post-sentence motion must be filed no later than ten days after the imposition of the sentence.

Pennsylvania rules of procedure, the clerk of the court did not enter this motion on the docket but instead forwarded it to Beals, Green's attorney of record, on April 22, 2004. (A206.)

On April 24, 2004, Green sent a letter, apparently to the clerk of the Court of Common Pleas, indicating that he was interested in filing a direct appeal but had not heard from his public defender since April 1, 2004. (A204.) In that letter, Green also asked for information on how to file an appeal and for additional time in which to file it. (*Id.*) The clerk of the court forwarded this letter to Beals on April 29, 2004. (A203.)

On May 3, 2004, the last day on which an appeal could be filed,[4] Beals filed with the Court of Common Pleas a motion for reassignment of counsel, noting that, in his pro se motion to modify sentence, Green had accused Beals of providing ineffective assistance of counsel and that Green should be granted new counsel in order to pursue his ineffective assistance claim via the Post-Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. Ann. §§ 9541 *et seq.* (A205.) The Court of Common Pleas granted Beals's motion that day and appointed Gail Chiodo to represent Green for the purposes of a PCRA action. (A207.) Green's Motion to Modify and Reduce Sentence was also entered on the docket that day. (A12.) As the Court of Common Pleas later explained, although that motion came after the deadline for post-sentencing motions and was therefore untimely as such, it could be construed as a PCRA petition because it contained claims of ineffective assistance of counsel, which may constitute grounds for relief under the PCRA. Moreover, the PCRA has no form requirement and the time period for filing such a petition had not yet lapsed. (A243 (Notice of Int. to Dismiss, Aug. 22, 2005).)

---

[4] Green had a 30-day window in which to file an appeal from his final sentence. *See* Pa. R. App. P. 903(c)(3). However, because May 1, 2004 was a Saturday, the deadline for appeal in this case was actually May 3, 2004. (*See* A314 (2008 Op. Super. Ct.).)

On July 18, 2004, Green filed with the Court of Common Pleas a motion to withdraw counsel and appoint new counsel. (A208-10.) This motion apparently referred to Beals and argued that Beals was ineffective. (*Id.*) New counsel had already been appointed on May 3, 2004, and the court denied Green's motion without comment on August 2, 2004. (A213.) The docket also reflects that on July 14 and 21, 2004, Green sent other *pro se* communications to both the Superior Court and Court of Common Pleas. (A12-13.) The substance of these communications is not in the record before me. On May 10 and June 1, 2005, Green sent another *pro se* communication to the court regarding the status of his PCRA petition and filed a *pro se* memorandum of law in support of that petition. (A14-15.)

On July 18, 2005, following various continuances and correspondence with Green, Chiodo submitted to the court a "no-merit" letter pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. Ct. 1988) and *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988). In her letter, Chiodo characterized Green's complaints primarily as claims of ineffective assistance of counsel, both during trial and in failure to file post-sentence motions or a direct appeal. (A220.) Chiodo found no merit in Green's argument that trial counsel should have filed a direct appeal, as "the proper avenue to address ineffectiveness claims, as are all the claims raised herein, is in a post conviction proceeding." (A221.) Chiodo then addressed the ineffectiveness claims Green had wished to raise on appeal and found that these claims also lacked merit. (A222-35.) The Court of Common Pleas granted Chiodo's motion to withdraw on July 19, 2005. (A215.)

On August 10, 2005, Green filed with the Court of Common Pleas a *pro se* objection to the motion to withdraw, which had already been granted. (A16.) On August 22, 2005, pursuant to Chiodo's "no-merit letter," the Court of Common Pleas issued a Notice of Intent to Dismiss the PCRA petition, analyzing and rejecting Green's claims and granting him twenty days to file

objections, otherwise the petition would be dismissed. (A243.) Green did not file an objection to the notice of intent to dismiss; instead, on September 13, 2005, he filed a petition for a writ of mandamus with the Supreme Court of Pennsylvania, which that court denied.[5] *Commonwealth v. Green*, No. 190 MM 2005 (Nov. 20, 20005). On September 19, 2005, the Court of Common Pleas issued an order dismissing Green's PCRA motion as Green had not satisfied his burden of establishing his right to post-conviction relief. (A250.)

On December 19, 2005, three months later, Green filed a *pro se* "objection" to the dismissal of his PCRA petition, arguing that he was entitled to an evidentiary hearing and appointment of new PCRA counsel. (A251-54.) The Court of Common Pleas dismissed Green's objection on January 1, 2006, and Green filed a timely notice of appeal. (A255, A256.)

On December 7, 2006, the Superior Court affirmed the Court of Common Pleas. (A264-72 (Op. Super. Ct., Dec. 7, 2006 ("2006 Op. Super. Ct.")).) The Superior Court noted that Green's brief on appeal did not include his claim of failure of trial counsel to file a direct appeal or any of the other claims addressed in the original "no-merit" letter and in Green's Pa. R. App. P. 1925(b) statement of facts contested on appeal. (A269-70.) Instead, Green's brief on appeal argued that Chiodo had been ineffective in failing to identify potentially meritorious PCRA claims.[6] (A268-69.) The Superior Court rejected these new claims on the merits. (A271-72.)

---

[5] The actual petition for writ of mandamus is not in the record before me.

[6] In his brief on appeal, Green argued that PCRA counsel was ineffective in failing to identify the following errors on the part of trial counsel: (1) failing to have the gun carried by Shaun Kocher tested to determine if it was operable; (2) failing to perform a ballistics test on the gun carried by Shaun Kocher to determine whether the bullet recovered from the victim matched the gun carried by Shaun; and (3) failing to impute to Shaun and Josh Kocher a vengeance motive for testifying that Green shot the victim. (A268 ("2006 Op. Super. Ct.")).

Green filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which that court denied without comment on May 15, 2007. (A273.)

On June 5, 2007, three years after his original conviction became final, Green filed a second petition for post-conviction relief with the Court of Common Pleas of Berks County. In his second petition, Green claimed that both Beals and Chiodo were ineffective in failing to request that Green's *pro se* post-trial motion filed on May 5, 2004 be withdrawn so that a direct appeal could be filed. (A277.) Green further alleged that trial counsel was ineffective in failing to raise a "mere presence" defense at trial and that Chiodo was ineffective in failing to raise this omission as a potential ground for post-conviction relief. (*Id.*) He also reiterated those ineffectiveness claims against Chiodo that he had raised in his brief on appeal of the first PCRA petition. (*Id.*)

On June 20, 2007, the Court of Common Pleas issued a notice indicating its intent to dismiss the second petition for PCRA relief as untimely.[7] (A287-90.) Green filed a timely objection on July 5, 2007. (A291-94.) On July 17, 2007, the Court of Common Pleas dismissed the second PCRA petition. (A295.) Green filed a timely notice of appeal on August 10, 2007. (A296.)

---

[7] Pennsylvania law provides that a petitioner must file a PCRA petition within one year of the date the judgment becomes final, unless a statutory exception applies. 42 Pa. Cons. Stat. Ann. § 9545(b)(1). The statute provides exceptions where: (i) the failure to raise the claim previously was caused by interference by government officials with the presentation of the claim in violation of the Constitution or laws of Pennsylvania or the Constitution or laws of the United States; (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the one-year time period and has been held by that court to apply retroactively. *Id.* The PCRA statute of limitations operates as a jurisdictional bar and is therefore not subject to tolling except as provided by these exceptions. (A313 (2008 Op. Super. Ct.).)

On April 21, 2008, the Superior Court affirmed the dismissal of the second PCRA petition, finding that the petition was untimely on its face and ineligible for any of the exceptions to the PCRA's statute of limitations. Green argued that the ineffectiveness of his trial and PCRA counsel was a "newly discovered fact" exception to the statute of limitations, but the Superior Court found that Green had not made a sufficient showing that he could not have learned of this fact until 60 days before filing his second petition. On October 9, 2008, the Pennsylvania Supreme Court affirmed the decision of the Superior Court. (A318.)

On November 28, 2008, Green filed *pro se* his federal petition for writ of habeas corpus under 28 U.S.C. § 2254. In this petition, Green claims that he was deprived of effective assistance of counsel when his attorney failed to discuss with him his right to appeal and failed to accommodate his request to file a direct appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470 (2000). Green also states an independent claim of deprivation of right to appeal.[8] (Am. Pet. Habeas Corpus 8, Feb. 9, 2009.) The District Attorney has objected that the petition is untimely. Alternatively, the District Attorney argues that Green has failed to exhaust his *Flores-Ortega* claim at the state level and that he procedurally defaulted on this claim by failing to present it to the Superior Court on appeal from his first PCRA petition.

I referred this case to Magistrate Judge Linda Caracappa for a Report and Recommendation. Judge Caracappa has recommended that the court dismiss the instant petition

---

[8] Green also raises other issues at various points in his supporting brief and in his objection to the magistrate judge's report and recommendation, including: (1) that the Court of Common Pleas erred in docketing his *pro se* motion to modify his sentence and in construing that motion as a PCRA petition instead of appointing new counsel to pursue a direct appeal; (2) ineffective assistance of PCRA counsel; and (3) various claims of ineffectiveness at trial, primarily with respect to Beals's statement to the trial judge that Green had given false testimony at trial. Because these claims are not included in his application for habeas corpus relief, I will not treat them as independent claims for relief. I will, however, consider these arguments to the extent that they are relevant to the timeliness of Green's *Flores-Ortega* claims.

as untimely. I agree. Green filed his federal petition for habeas relief well after the statutory

deadline for filing such a petition. Although Green is entitled to statutory tolling of the one-year

limitations period during the time that his first PCRA petition was pending, this tolling is

insufficient to render his petition timely. Finally, any equitable tolling to which Green may

arguably be entitled would also be insufficient to render his petition timely.

## II. Jurisdiction and Standard of Review

### A. Statute of Limitations

The court exercises jurisdiction over this habeas petition under 28 U.S.C. § 2254(a). A

federal court may not consider the merits of a petition for writ of habeas corpus unless the

petition is timely. AEDPA imposes a one-year limitations period for habeas corpus petitions. *See*

28 U.S.C. § 2244(d)(1). The statute provides several alternative start dates for this one-year

statutory period, the applicability of which depends on the circumstances of the case. *Id.*

Generally, the statute of limitations will begin to run when an applicant's conviction

becomes final, either after the conclusion of direct review or upon the expiration of the time for

seeking such review. 28 U.S.C. § 2244(d)(1)(A). If a habeas petitioner bases his claim on newly

discovered evidence, however, the limitations period begins to run on "the date on which the

factual predicate of the claim or claims presented could have been discovered through the

exercise of due diligence." *Id.* § 2244(d)(1)(D). Section 2244(d)(1)(D) thus provides a petitioner

with a later accrual date than § 2244(d)(1)(A) only if "vital facts" could not have been known

before the conviction became final. *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004) (quoting

*Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)). Finally, if "State action in violation of the

Constitution or laws of the United States" has prevented the applicant from filing a federal

petition for writ of habeas corpus, the statute of limitations begins to run on the date on which the impediment to filing created by such state action is removed. 28 U.S.C. § 2244(d)(1)(B).

Regardless of which start date applies, the limitations period is subject to two tolling exceptions: (1) statutory tolling, for the time a "properly filed" application for state post conviction review is pending in state court, *id.* § 2244(d)(2); and (2) equitable tolling, a judicially-crafted exception, *see Merritt v. Blaine,* 326 F.3d 157, 161 (3d Cir. 2003). Unlike the start date for AEDPA's limitations period, which the court determines on a claim-by-claim basis, a pending state post-conviction proceeding tolls the limitations period for all claims in a habeas petition provided the state proceeding attacks the same judgment as the habeas petition does. *Sweger v. Chesney*, 294 F.3d 506, 520 (3d Cir. 2002).

## B. Standard of Review

Where a habeas petition has been referred to a magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), the district court reviews *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1). After conducting such a review, this court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.*

## III. Discussion

Green has filed the following objections to the Report and Recommendation: (1) Green's second PCRA petition was not, in fact, untimely as a matter of state law as it raised a layered ineffective assistance of counsel claim pursuant to *Commonwealth v. Pursell*, 724 A.2d 293 (Pa. 1999); (2) the limitations period of AEDPA should be tolled during the pendency of Green's second PCRA petition because he filed that petition in reliance on the Court of Common Pleas' apparent suggestion that he do so in its opinion dismissing his first PCRA claim; (3) any

procedural default at the state level or delay in filing a federal habeas claim was caused by ineffective assistance of trial and PCRA counsel and by the state courts' unreasonable interpretation of state law, and therefore should not foreclose habeas relief; and (4) the court should overlook any procedural deficiencies in the instant petition in light of the merits of Green's constitutional claims. As discussed below, this court finds that Green's objections lack merit.

Green's conviction became final on May 3, 2004, the deadline for filing a direct appeal.[9] By this point, Green was also aware of the factual predicates of his federal constitutional claims, as he was aware that no appeal in his case had been filed before the deadline for doing so.[10] The limitations period therefore began to run on that date.[11] *See* 28 U.S.C. § 2244(d)(1)(A).

---

[9] *See supra* note 4. The magistrate judge found that Green's conviction became final on May 1, 2004. (*See* Report and Recommendation ("R&R") 4.) However, because Green missed the applicable limitations deadline by several months, this two-day difference does not affect the overall validity of the report and recommendation.

[10] Section 2244(d)(1)(D) refers to the petitioner's awareness of facts underlying a potential claim for habeas relief, not his understanding of their legal consequences or significance. *Owens*, 235 F.3d at 359. Even assuming that Green did not learn the factual basis of his *Flores-Ortega* claim when the time for filing a direct appeal expired, he was clearly aware of these alleged errors on June 5, 2007, when he raised these same concerns in his second PCRA petition. (*See also* A316-17 (2008 Op. Super. Ct., finding that Green had failed to explain why he could not have known the factual bases of his claims more than 60 days before the filing of his second PCRA on June 5, 2007).) Since Green did not file the instant petition for habeas corpus relief until November 28, 2008, over a year and six months later, the petition would be untimely even if the limitations period began at that point.

[11] Green does not rely on any new constitutional rights made retroactive by the Supreme Court. Moreover, none of the alleged procedural violations by the state courts after May 3, 2004 constitutes an "impediment" of his ability to file a federal habeas claim within the meaning of section 2244(d)(1)(B). To the extent that the alleged state court errors influenced Green's choice not to file a federal habeas petition earlier, they did so by causing him to think that he was required to pursue further state remedies, not by obstructing his access to federal court. *See Choice v. Green*, 2006 U.S. Dist. LEXIS 7498, at *6 (E.D. Pa. Feb. 27, 2006) ("The term impediment . . . has nothing to do with the exhaustion of state remedies . . . .").

**A. Statutory Tolling**

The magistrate judge found that, according to AEDPA's statutory tolling provisions, Green's first PCRA petition operated to toll the limitations period for filing his federal habeas claim but that his second PCRA petition did not. The magistrate judge concluded that, absent equitable tolling, Green's deadline for filing a federal habeas petition was May 13, 2008. I agree, but find that Green's deadline for filing a federal habeas petition was actually May 15, 2008.

AEDPA's statute of limitations is tolled for the "time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2) (emphasis added). The tolling period ends when the state's highest court has completed review. *Lawrence v. Florida*, 549 U.S. 327, 332 (2007). A petition for state post-conviction review, such as a PCRA petition, qualifies as properly filed "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *see Swartz v. Meyers*, 204 F.3d 417, 420 (3d Cir. 2000) (tolling limitations period for time during which PCRA petition is pending). Untimely PCRA petitions are not "properly filed" for the purposes of the tolling provisions of AEDPA. *See Satterfield v. Johnson*, 434 F.3d 185, 192 (3d Cir. 2006).

The Court of Common Pleas docketed Green's self-styled motion for reconsideration of sentence on May 3, 2004—the same day that Green's conviction became final—and later construed that motion as a PCRA petition. The AEDPA limitations period was therefore tolled from that date until May 15, 2007, when the Pennsylvania Supreme Court ultimately denied review. Because no time passed between the expiration of the period for direct appeal and the filing of the first PCRA claim, Green had exactly one year from May 15, 2007 in which to file a federal habeas petition. The limitations period was not tolled during the pendency of Green's

second PCRA petition because, as decided by the Superior Court, that petition was untimely and thus not properly filed. (A309.)

Green also appears to object that his second PCRA petition was, in fact, properly filed according to Pennsylvania law because it presented a "layered" ineffectiveness of counsel claim.[12] (Pet'r's Obj. to R&R ("Pet'r's Obj.") 10-11.) However, because state court rulings on questions of state law are binding in federal habeas proceedings, *Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004), a state court determination that a post-conviction petition is untimely, like any other determination of state law, is not properly subject to second-guessing on federal habeas review. *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (concluding that when state court rules that document was not properly filed, "that is the end of the matter for purposes of § 2244(d)(2)" (internal quotation and alteration omitted)). State court findings of fact relevant to procedural compliance are entitled to a "presumption of correctness" that a petitioner must rebut through "clear and convincing evidence" to the contrary. *Washington v. Sobina*, 509 F.3d 613, 621 (3d Cir. 2007). Green has presented no evidence that would tend to rebut any of the Superior Court's relevant findings of fact. I must therefore conclude that his second PCRA petition was not properly filed. Nevertheless, I will address Green's argument that his second PCRA petition was actually timely *infra* to the extent that it is relevant to equitable tolling.

---

[12] According to Pennsylvania law, when a criminal defendant's attorney commits error at trial and subsequent appellate or PCRA counsel unreasonably fails to raise the issue of ineffective assistance of trial counsel, the defendant may later bring a "layered" ineffectiveness claim alleging that both trial and subsequent counsel were ineffective. "Layered" claims enable defendants to raise claims of trial counsel ineffectiveness that would otherwise be estopped by waiver. *See Commonwealth v. McGill*, 832 A.2d 1014, 1022 (Pa. 2003).

**B. Equitable Tolling**

Even when no ground exists for statutory tolling of the AEDPA limitations period, courts may apply the doctrine of equitable tolling in extraordinary circumstances. The Third Circuit has held that equitable tolling applies to AEDPA's timeliness provisions because these provisions are a statute of limitations, not a jurisdictional bar.[13] *Miller v. N.J. State Dep't of Corr.*, 145 F.3d 616, 617-18 (3d Cir. 1998).

"[E]quitable tolling is proper 'only when the principles of equity would make the rigid application of a limitation period unfair.'" *Miller*, 145 F.3d at 618 (quoting *Shendock v. Office of Worker's Comp. Programs*, 893 F.2d 1458, 1462 (3d Cir. 1990)). Accordingly, courts should use equitable tolling sparingly and apply it "only in the rare situation where [it] is demanded by sound legal principles as well as the interests of justice." *LaCava v. Kyler*, 398 F.3d 271, 275 (3d Cir. 2005) (quoting *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)) (alteration in original).

The Third Circuit has set forth "two general requirements for equitable tolling: (1) that 'the petitioner has in some extraordinary way been prevented from asserting his or her rights;' and (2) that the petitioner has shown that 'he or she exercised reasonable diligence in investigating and bringing [the] claims.'" *Merritt*, 326 F.3d at 168 (quoting *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001)); *see also Lawrence*, 549 U.S. at 336 (using similar language for equitable tolling standard).

In the Third Circuit, extraordinary circumstances sufficient to warrant equitable tolling may exist where "(1) the defendant has actively misled the plaintiff, (2) if the plaintiff has in

---

[13] The United States Supreme Court has not yet decided whether equitable tolling is available in the context of a federal habeas corpus petition. *See Lawrence*, 549 U.S. at 336 ("We have not decided whether § 2244(d) allows for equitable tolling.").

some extraordinary way been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Jones v. Morton,* 195 F.3d 153, 159 (3d Cir. 1999) (internal quotations omitted) (quoting *Midgley*, 142 F.3d at 179, and applying *Midgley*'s language in federal habeas context).

The petitioner must further demonstrate that the extraordinary circumstance prevented him from filing his claim despite his diligent attempts to do so. There must be "a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)). "Due diligence does not require 'the maximum feasible diligence,' but it does require reasonable diligence in the circumstances." *Schlueter*, 384 F.3d at 74. "Mere excusable neglect is not sufficient." *Miller*, 145 F.3d at 619. The petitioner must exercise diligence when pursuing state and federal remedies; a petitioner's diligence in one forum does not excuse his lack of diligence in the other. *See LaCava*, 398 F.3d at 277 (obligation to exercise diligence applies "not . . . solely to the filing of the federal habeas petition" but "during the period appellant is exhausting state court remedies as well"); *Thorpe v. Wilson*, No. 06-712, 2007 U.S. Dist. LEXIS 2607, at *14 (E.D. Pa. Jan. 12, 2007) ("Reasonable diligence in the filing of a second PCRA petition and appealing its dismissal do not amount to reasonable diligence in filing the instant habeas petition . . . ."). Finally, the petitioner bears the burden of proving he exercised reasonable diligence. *See Urcinoli v. Cathel*, 546 F.3d 269, 277 (3d Cir. 2008).

The magistrate judge made no detailed findings with regard to equitable tolling. (R&R 5.) In his objections to the report and recommendation, however, Green appears to suggest the following as bases for equitable tolling: (1) the state courts' erroneous application of the law or misconduct in dismissing Green's first and second PCRA claims and in failing to reinstate his direct appeal rights; (2) ineffective assistance of trial and PCRA counsel; (3) Green's belief that he was required to file a second PCRA petition in order to properly exhaust state remedies; and (4) Green's reliance, in filing his second PCRA petition, on the Court of Common Pleas' apparent suggestion that he do so. Green further urges that equitable tolling is appropriate because, if the instant petition is deemed untimely, he will be deprived of an opportunity to have his constitutional claims heard on the merits. Because some of these claims for equitable tolling are based on common facts, I will address them in the approximate chronological order that they allegedly accrued.

**1. Error in Docketing Motion to Reduce Sentence**

Green raises a number of concerns with respect to the state court's, Beals's, and Chiodo's handling of his *pro se* motion to modify or reduce his sentence. Green claims that the trial court should not have docketed this motion or construed it as a PCRA motion but instead should have rejected it as a *pro se* filing from a represented party. (Pet'r's Obj. 3.) Green also appears to argue that Beals and Chiodo improperly characterized Green's *pro se* motion as effectively filed, which led that court to rule on that motion instead of permitting a direct appeal. (*Id.* at 10.) Green appears to be under the impression that, by characterizing his motion as a PCRA petition and ruling on it, the Court of Common Pleas cut off his ability to pursue a direct appeal.

Although the court's and attorneys' conduct here may be relevant to the merits of Green's ineffective assistance claim, it is not relevant to the applicability of the equitable tolling doctrine.

Aside from generally arguing that his direct appeal rights would already have been restored had the court or his attorneys acted differently, Green fails to explain how events that took place around May 2004 prevented him from filing a federal habeas petition by May 15, 2008, when the AEDPA limitations period expired. *See Williams v. Beard*, 300 F. App'x 125, 134-35 (3d Cir. 2008) (finding that state court's alleged error in construing first state post-conviction motion as PCRA petition, rather than as a direct appeal, was not ground for equitable tolling during pendency of second PCRA petition); *Reiss v. Pa. Att'y Gen.*, No. 08-02259, 2009 U.S. Dist. LEXIS 19060, at *25 (E.D. Pa. Mar. 2, 2009) ("[T]he mere fact that the public defender's conduct had a connection to petitioner's delay in filing his habeas claim does not transform this attorney error into an extraordinary circumstance to justify equitable tolling."). Accordingly, I find that Green is not entitled to any equitable tolling on this ground.

## 2. Errors in Dismissing First PCRA

Green also argues that the state courts erred in dismissing his first PCRA petition and that Chiodo failed to identify potentially meritorious claims during her review of his case.

Any error on the part of the state courts in dismissing Green's first PCRA petition cannot justify equitable tolling. Of necessity, every federal habeas petitioner who has exhausted his state post-conviction remedies must argue that the state court erred in denying him post-conviction relief. To grant equitable tolling on such grounds, absent a direct causal relationship between the state court's error on post-conviction review and the petitioner's inability to file a timely federal habeas petition, would be to eviscerate AEDPA's timeliness requirement.

The Third Circuit has recognized that serious misconduct by post-conviction counsel may justify equitable tolling in some cases. *See, e.g., Schlueter*, 384 F.3d at 76-78. However, in order to warrant equitable tolling, attorney error must be worse than mere neglect; the attorney must

affirmatively deceive the client or persistently neglect the client's matter. *See id.* at 76 (distinguishing affirmative misrepresentation from failure to keep promise); *Ajamu-Osagboro v. Patrick*, 620 F. Supp. 2d 701, 716-17 (E.D. Pa. 2009) (PCRA counsel's failure to file appeal of PCRA dismissal did not justify equitable tolling).

Failure to identify potentially meritorious claims on PCRA review does not rise to the level of attorney misconduct that would generally warrant equitable tolling. *See Reiss*, 2009 U.S. Dist. LEXIS 19060, at *22-25. Nor, even, does intentional failure to pursue such claims. *See id.*

Moreover, even if Chiodo's conduct had, at some point, risen to the level of attorney misconduct that warrants equitable tolling, Green fails to provide a convincing explanation of how Chiodo's alleged misconduct continued, for over three years after her withdrawal from his case, to prevent him from filing a federal habeas petition. Chiodo's last action with respect to Green's case was filing a "no-merit letter" and motion to withdraw on July 18, 2005, over a year before the statutory tolling period ended. Green argues that Chiodo's "detached evaluation" of his claims caused the PCRA court to erroneously dismiss his first PCRA petition. (Pet'r's Obj. 5-6.) Alternatively, Green argues that Chiodo's failure to identify various potential claims prevented him from raising certain claims during proceedings on the first PCRA petition, forcing him to file a subsequent PCRA petition in order to exhaust his state remedies on those claims and to preserve his ineffective assistance claim against her. (*Id.* at 11.) However, neither of these arguments, if accepted, would establish that Green was actually unable to file a federal habeas petition before May 15, 2008.

Green's second PCRA petition did include some federal constitutional claims that had not previously been presented to the highest state court.[14] Green arguably was required to attempt to exhaust these claims in the state court via a second PCRA petition before he could obtain relief on those claims in federal court.[15] However, attorney misconduct does not warrant equitable tolling merely because it requires the petitioner to file a second PCRA petition, even if the AEDPA limitations period runs while the second PCRA is pending, because nothing prevents the petitioner from filing a federal habeas petition at the same time. *See Reiss*, 2009 U.S. Dist. LEXIS 19060, at *25-28. To mitigate any potential hardship to inmates who must exhaust state

---

[14] Most notably, on appeal of his first PCRA petition, Green had failed to brief his *Flores-Ortega* claim for denial of counsel on direct appeal. (2006 Op. Super. Ct., A266-67.) Some other Sixth Amendment claims Green included in his second PCRA were also new, but Green did not include them in the instant habeas application and therefore had no need to exhaust them beforehand. Section 2254(b)(1)(A) requires only that a habeas petitioner exhaust state remedies with respect to the federal constitutional claims that he includes in his habeas petition. *See* 28 U.S.C. § 2254(c) (requiring an applicant seeking relief to have previously raised before state courts, "by any available procedure, *the question presented*" (emphasis added)). Similarly, Green did not need to exhaust his ineffective assistance claims against Chiodo before including them in a federal habeas petition because claims of ineffective PCRA counsel are not cognizable on federal habeas review in the first place. *See Tillett v. Freeman*, 868 F.2d 106, 107-08 (3d Cir. 1989) (holding that federal habeas petitions will not be dismissed on account of unexhausted claims that PCRA counsel was ineffective because ineffective assistance of PCRA counsel is not a ground for federal habeas relief); *see also Slutzker v. Johnson*, 393 F.3d 373, 384 (3d Cir. 2004) (citing *Tillett*).

Green also argues that he was required to exhaust his ineffective assistance claim against Chiodo in order to rely on her ineffectiveness as "cause" for his procedural default on some of his claims, citing a number of Supreme Court cases that he claims support this position. *See, e.g., Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). (Pet'r Obj. 1-2, 6-7.) However, these cases all pertain to ineffective assistance of trial or appellate counsel, which, unlike ineffective assistance of PCRA counsel, can form the basis for a federal constitutional claim. I am unable to locate any authority supporting the proposition that federal habeas petitioners must exhaust claims arising under state law in state court before raising claims arising under federal law on federal habeas review.

[15] This point is arguable because AEDPA's exhaustion requirement does not require habeas petitioners to pursue state remedies that are clearly time-barred or otherwise unavailable according to state law. *See Doctor v. Walters*, 96 F.3d 675, 681 (3d Cir. 1996).

remedies but are uncertain as to whether the state courts will consider their state petitions "properly filed," federal courts frequently permit petitioners to file timely, "protective" federal habeas petitions that are then stayed pending resolution of litigation in state courts. *See Rhines v. Weber*, 544 U.S. 269, 275-79 (2005); *Merritt*, 326 F.3d at 170 n.10.

Because Green did not attempt to file a protective petition, he cannot show that extraordinary circumstances outside his control prevented him from meeting AEDPA's timeliness requirements. *See Brown v. Klem*, No. 05-824, 2006 U.S. Dist. LEXIS 4019, at *23 (E.D. Pa. Feb. 3, 2006). Green's diligent pursuit of his state remedies does not excuse his delay in pursuing his federal rights. *See Thorpe*, 2007 U.S. Dist. LEXIS 2607, at *14.

That Green acted *pro se* does not excuse his failure to avail himself of the "stay-and-abeyance" procedure. Although it may understandably be difficult for *pro se* inmates to discern the proper procedures for filing their complaints, nonetheless the law requires them to do so. *See Jones*, 195 F.3d at 160 (noting *pro se* petitioner's lack of understanding of legal requirements is not basis for equitable tolling).[16]

### 3. Error in Dismissal of Second PCRA Claim

Finally, Green argues that he should receive equitable tolling during the pendency of his second PCRA petition because he filed it in reliance on his interpretation of state law and language in the Court of Common Pleas' opinion dismissing his first PCRA claim, both of which

---

[16] For similar reasons, Green's decision to file a second PCRA petition cannot be characterized as an attempt to "assert[] his rights mistakenly in the wrong forum." *See Golden v. Sabol*, No. 06-3245, 2007 U.S. Dist. LEXIS 82221, at *19-21 (E.D. Pa. Nov. 5, 2007). Here, as in *Golden*, at no point was Green asserting or led to believe that, by filing various petitions for relief in state court, he was exercising his right to challenge state incarceration through federal habeas corpus. *See id.* at *20. To hold that the pendency of an incorrectly filed or untimely PCRA appeal is a ground for equitable relief in federal habeas cases would qualify many habeas petitions for equitable tolling, despite the statutory tolling provisions discussed above that strictly limit availability of federal review on that basis. *See id.* at *20-21.

he interpreted as stating that his second PCRA claim would not be dismissed as untimely.

(Pet'r's Obj. 8.) Green argues that he filed his second claim in reliance on his "reasonable

expectation that the state would hold itself accountable to it's [sic] dictates of procedural law"

and on his own understanding of "clearly established and regularly followed state law." (*Id.* at 9.)

In general, legal uncertainty as to whether a state post-conviction petition would be

deemed "properly filed" is insufficient to warrant equitable tolling. *See Merritt v. Blaine*, 326

F.3d 157, 169-70 (3d Cir. 2003). Even where a petitioner in a non-capital case reasonably

believes that a PCRA petition is properly filed, he will not be entitled to equitable tolling during

the pendency of that petition if it is ultimately deemed untimely.[17] *See id.* at 169 (discussing

*Fahy*, 240 F.3d at 244).

Equitable tolling is more likely to be appropriate where a petitioner not only faces legal

uncertainty but is also actively misled as to the proper procedure to follow. *See Ukawabutu v.*

*Cathel*, No. 06-837, 2008 U.S. Dist. LEXIS 33708, at *21-22 n.9 (D.N.J. Apr. 24, 2008)

(granting equitable tolling during pendency of first habeas petition because "[t]he State misled

petitioner when it argued on [the] first federal habeas petition that it was not fully exhausted, and

then asserted on state PCR review that some of the very same claims were procedurally barred

---

[17] Moreover, the law was not as "inhibitively opaque" in Green's case as it was in *Merritt*. The Pennsylvania Supreme Court has clearly held that PCRA counsel's ineffectiveness in failing to previously identify potentially meritorious claims, even within the context of a layered claim, will not excuse compliance with the timeliness requirements of the PCRA. *Commonwealth v. Gamboa-Taylor*, 753 A.2d 780, 785-86 (Pa. 2000). Green cites some Pennsylvania cases that purport to carve out an exception to the rule in *Gamboa-Taylor* where a second PCRA petition can be seen as an "extension" of a prior PCRA. *See, e.g.*, *Commonwealth v. Ceo*, 812 A.2d 1263 (Pa. Super. Ct. 2002), *rev'd*, 845 A.2d 199 (Pa. 2004). The Pennsylvania Supreme Court expressly disapproved this "extension" theory in *Commonwealth v. Robinson*, 837 A.2d 1157, 1158 (Pa. 2003), a case that is readily discoverable by checking the appellate history in *Ceo*. I note that the Pennsylvania Supreme Court issued its decisions in both *Robinson* and *Ceo* before Green's trial and conviction; Green's reliance on the Superior Court's reasoning in *Ceo* and in similar cases is therefore not reasonable.

because they had been raised on direct review by petitioner previously"); *see also Pliler v. Ford*, 542 U.S. 225, 235 (2004) (O'Connor, J., concurring) ("[I]f the petitioner is affirmatively misled, either by the court or by the State, equitable tolling might well be appropriate."). However, even if Green were to prove that he was "misled" by the Court of Common Pleas into believing that a second PCRA petition would be proper, these circumstances do not give rise to equitable tolling.

On review of the Court of Common Pleas' language, it appears that the Court of Common Pleas did not intend to suggest that Green bring his claims in a subsequent PCRA petition.[18] I read the language of the Court of Common Pleas to say that Green was not prejudiced by Beals's failure to file a direct appeal. The court reviewed the claims that, in its understanding, Green would have wished to raise on direct appeal and noted that each was an ineffective assistance of counsel claim that normally would be put off until PCRA review. Thus, the court concluded,

---

[18] Green's alleged belief that the state court told him to file a subsequent PCRA petition is apparently based on the following language in the Court of Common Pleas' notice of intent to dismiss the PCRA petition:

> The defendant first claims that trial counsel was ineffective for failing to file a direct appeal. However, the proper avenue to address ineffective assistance claims, as all the claims the defendant has risen herein [sic], is in a post conviction proceeding. . . . [W]e regularly dismiss claims of ineffectiveness raised for the first time on direct appeal without prejudice to the appellant's right to raise the same claim in a subsequent PCRA petition.

 (A245 (internal quotations omitted).) Green apparently argues that, by this language, the Court of Common Pleas meant that it would not address his claims of ineffective assistance because such claims were only cognizable in a PCRA action, and that the court was dismissing his claims without prejudice to his filing a subsequent PCRA petition. Green argues that this language demonstrates "confusion as to the posture of review" by treating his motion as a direct appeal in its decision that his complaints should be brought through a PCRA motion instead, but at other points "confin[ing]" him to PCRA standards of prejudice. (Pet'r's Obj. 8-9.)

I also note that Chiodo's "no-merit" letter contains language similar to that of the Court of Common Pleas, except insofar as the "no-merit" letter states "the proper avenue to address ineffective assistance claims, as *are* all the claims raised herein, is in a post conviction proceeding." (A221 (emphasis added).) This resolves, to some extent, any grammatical ambiguity in the Court of Common Pleas' notice of intent to dismiss.

Beals's failure to file a direct appeal did not deprive Green of an appropriate forum in which to raise his ineffective assistance claims.[19] The Court of Common Pleas then analyzed each claim it believed Green would have wanted to raise on direct appeal and rejected each on the merits, after which there was no need for Green to file a subsequent PCRA petition raising those claims. (A245-49.) There is therefore no indication that the court intentionally misled Green with respect to his right to file a subsequent petition.

Finally, even if *inadvertently* misleading statements on the part of the state government can give rise to a valid claim for equitable tolling, the petitioner's misreading of the state court's language must be a reasonable one. *See Fugah v. Mazurkiewicz*, No. 96-7292, 2005 U.S. Dist. LEXIS 7292, at *21-24 (E.D. Pa. Apr. 27, 2005) (denying equitable tolling based on allegedly unclear instruction by district court because, *inter alia*, "no reasonable person" would interpret the instruction as modifying the statute of limitations for filing habeas petition).

Green could not have been misled by the Court of Common Pleas since the subsequent decision of the Superior Court did not include the allegedly misleading language. Indeed, in his brief to that court on appeal of the dismissal of his PCRA petition, Green did not even raise the issue of the failure to file a direct appeal. The reasonableness of Green's reading of the Court of Common Pleas' language was further undermined on June 20, 2007, the date that the Court of Common Pleas issued its notice of intent to dismiss his second PCRA petition as untimely. At that point, only one month and five days of AEDPA's limitations had elapsed, leaving Green ample time—over ten months—in which to file a protective federal habeas petition and request that it be stayed pending appeal of his second PCRA petition. However, Green did not file a

---

[19] Because my discussion here is limited to the question of whether the Court of Common Pleas' language was ambiguous at this point, I express no opinion on the correctness of either its description of the facts or its legal reasoning.

federal habeas petition until one year and five months later. Therefore, I cannot conclude the

PCRA court's arguably ambiguous language prevented Green "in some extraordinary way . . .

from asserting [his] rights" or that he "exercised reasonable diligence in investigating and

bringing [the] claims" despite the procedural obstacles he faced. *Merritt*, 326 F.3d at 168

(quoting *Fahy*, 240 F.3d at 244).

**4. Merits**

Finally, Green alleges that equitable tolling should apply based on another extraordinary

circumstance: the underlying the merits of his petition. Specifically, Green contends that he is

entitled to habeas relief because his underlying claims present "constitutional interest of the first

magnitude." (Pet'r's Obj. 9.) To the contrary, unless germane to the reason for the untimely

filing, the merits of a habeas petition, however valid, cannot constitute an extraordinary

circumstance that warrants equitable tolling. *See Sch. Dist. of City of Allentown v. Marshall*, 657

F.2d 16, 20 (3d Cir. 1981) ("The tolling exception is not an open-ended invitation to the courts to

disregard limitations periods simply because they bar what may be an otherwise meritorious

cause."); *Brown*, 2006 U.S. Dist. LEXIS 4019, at *23 (rejecting petitioner's argument that

undisputedly meritorious claim constitutes extraordinary circumstance to justify equitable

tolling).[20]

---

[20] The court recognizes that the result of such a limitations period may produce harsh
consequences in some cases. As the United States Supreme Court has stated:

> It goes without saying that statutes of limitations often make it impossible to
> enforce what were otherwise perfectly valid claims. But that is their very purpose,
> and they remain as ubiquitous as the statutory rights or other rights to which they
> are attached or are applicable. We should give them effect in accordance with
> what we can ascertain the legislative intent to have been.

*United States v. Kubrick*, 444 U.S. 111, 125 (1979). Congress has determined that a one year
limitations period applies to petitions for a writ of habeas corpus, and courts have a duty to apply

## III. Conclusion

Because Green's objections present no valid grounds for equitable tolling, the court cannot consider the merits of the petitioner's claims but must dismiss his habeas petition as untimely under § 2244(d).

## IV. Certificate of Appealability

Having concluded that Green's petition for habeas relief is untimely, the court also must decide whether to issue a certificate of appealability ("COA"). *See* Third Circuit Local Appellate Rule 22.2. The court may issue a COA only if the defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, a COA may not issue unless the prisoner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* at 484; *see Thorpe*, 2007 U.S. Dist. LEXIS 2607, at *15 (finding that COA should not issue where habeas petition was not filed within one-year period of limitations under § 2244(d)(1)).

As discussed above, I find that, even if every debatable point of law and fact were to be resolved in Green's favor, he would nevertheless not be entitled to sufficient tolling of AEDPA's limitations period to render the instant petition timely. Reasonable jurists could not disagree

---

the law as enacted by Congress. In this case, that duty requires the court to dismiss the defendant's petition as untimely.

about the timeliness of Green's federal habeas petition. Therefore, the court will not issue a certificate of appealability with respect to any of Green's habeas claims.